﻿Citation Nr: AXXXXXXXX
Decision Date: 01/30/20 Archive Date: 01/30/20

DOCKET NO. 190403-9314
DATE: January 30, 2020

ORDER

Entitlement to a rating higher than 20 percent for diabetes mellitus, type II, is denied.

Entitlement to a rating higher than 50 percent for posttraumatic stress disorder (PTSD) is denied.

FINDINGS OF FACT

1. For the entire appeal period, the most probative evidence does not show that the Veteran’s diabetes mellitus, type II, requires regulation of activities or an avoidance of strenuous activities. 

2. For the entire appeal period, the Veteran’s PTSD manifested by occupational and social impairment with reduced reliability and productivity; the Veteran’s PTSD did not manifest by occupational and social impairment with deficiencies in most areas. Although he experienced suicidal ideation which was noted to be passive, this symptom, coupled with his other symptoms, were not of the severity and frequency to cause occupational and social impairment with deficiencies in most areas.

CONCLUSIONS OF LAW

1. The criteria for entitlement to a rating higher than 20 percent for service-connected diabetes mellitus, type II, have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.119, Diagnostic Code 7913.

2. The criteria for entitlement to a rating higher than 50 percent for posttraumatic stress disorder have not been met. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1-4.14, 4.130, Diagnostic Code 9411.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service in the United States Army from July 1966 to November 1974.

The rating decision on appeal was issued in March 2019. In April 2019, the Veteran elected the modernized review system. 38 C.F.R. § 19.2(d). He selected the “evidence submission reviewed by a Veterans Law Judge” option, which allows for a Veteran to submit additional evidence in support of his appeal within 90 days. Evidence received after this time cannot be considered. 

The evidence received after the 90 days allowed for evidence submission include VA examination reports for the Veteran’s PTSD and diabetes, as well as recent VA treatment records. Although these records are consistent with the evidence already of record that the Board must consider, the Board may not reference this evidence in rendering a decision in this appeal. 

1. Entitlement to a rating higher than 20 percent for diabetes mellitus, type II.

The Veteran contends that his diabetes mellitus warrants a rating higher than 20 percent. Specifically, he stated:

At the finding of diabetes, I was taking 40 units of insulin per day – now its 98 units per day including 1000 mg of metformin. My A1C now is always in the 7’s. I started with 30 percent for diabetes and 10 percent for tinnitus now the VA says 20 percent diabetes and no mention of tinnitus. I am not a doctor, but with these changes I feel my diabetes is worse now than before.

Initially, the Board notes that since service-connection was granted, the Veteran’s diabetes mellitus, type II, has been rated as 20 percent disabling. It was never rated as 30 percent disabling alone. In addition, the Veteran continues to be service-connected for tinnitus, which has always been rated as 10 percent disabling.

Regarding the propriety of the Veteran’s diabetes mellitus, type II, rating, the Board notes that this decision will only address the rating assigned for the Veteran’s diabetes mellitus specifically. A review of the record shows that he is also seeking entitlement to service connection for diabetic neuropathy. These issues are not currently before the Board and are currently being addressed by the RO. 

The Veteran’s diabetes mellitus, type II, is rated under Diagnostic Code 7913. The criteria for rating diabetes are “successive.” Camacho v. Nicholson, 21 Vet. App. 360, 366 (2007). “Successive” criteria exist where the evaluation for each higher disability rating includes the criteria of each lower disability rating, such that if a component is not met at any one level, the Veteran can only be rated at the level that does not require the missing component. Tatum v. Shinseki, 23 Vet. App. 152, 156 (2008).

Here, the Veteran’s diabetes mellitus, type II, is rated as 20 percent disabling, which requires one or more daily injection of insulin and restricted die, or; oral hypoglycemic agent and restricted diet. 38 C.F.R. § 4.119, Diagnostic Code 7913. The next higher rating, 40 percent, requires insulin, a restricted diet, and regulation of activities. 38 C.F.R. § 4.119, Diagnostic Code 7913.

The term “regulation of activities” is specifically defined as “avoidance of strenuous occupational and recreational activities.” Camacho, 21 Vet. App. at 363. Medical evidence is required to support this criterion for a 40 percent rating. Id. at 364. In other words, a medical provider must indicate that the claimant’s “diabetes is of such severity that he should curtail his activities such as to avoid strenuous activity.” Id.

Although VA regulations generally provide that symptoms need only more nearly approximate the criteria for a higher rating in order to warrant such a rating, see 38 C.F.R. §§ 4.7, 4.21, those regulations do not apply where the rating schedule establishes successive criteria. The criteria for 60 and 100 percent ratings also require “regulation of activities.” See Middleton v. Shinseki, 727 F.3d 1172, 1178 (Fed. Cir. 2013). A 60 percent rating is available when diabetes requires insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated. 38 C.F.R. § 4.119, Diagnostic Code 7913. A 100 percent rating under Diagnostic Code 7913 requires more than one daily injection of insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated. 

The evidence of record relating to the Veteran’s claim for an increased rating for his diabetes mellitus includes a voluminous amount of VA treatment records, the Veteran’s lay statements, as well as a VA examination report dated in February 2019.

The Board does not dispute that the Veteran has increased the amount of medication necessary to control his insulin. However, he has not claimed that his diabetes mellitus requires regulation of activities. Regardless, any regulation of activities would have to be shown by medical evidence. No regulation of activities is indicated in any of the medical evidence of record. The February 2019 VA examination clearly states that the Veteran does not require regulation of activities as part of medical management of his diabetes mellitus.

The Veteran’s VA treatment records from May 2019 state that “he is able to do some of his desired physical activities, sometimes he is sore because of it, but he can get through the day with some additional meds.” However, this notation is in relation to the medication (lisinopril) the Veteran takes for his allergies. It does not show that his activities must be regulated as a result of his diabetes mellitus.

Absent medical evidence that the Veteran’s diabetes mellitus requires him to regulate his activities, a higher rating cannot be granted. A rating higher than 20 percent for the Veteran’s diabetes mellitus, type II, must denied.

2. Entitlement to a rating higher than 50 percent for posttraumatic stress disorder.

The Veteran contends that his PTSD is more severe than contemplated by his currently assigned 50 percent rating. His PTSD is rated under Diagnostic Code 9411. 

Under the General Rating Formula for Mental Disorders, a 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped, speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent disability rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech that is intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. 

A 100 percent disability rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, or for the Veteran’s own occupation or name. 38 C.F.R. § 4.130.

The symptoms recited in the criteria in the rating schedule for evaluating mental disorders are “not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating.” Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In adjudicating a claim for an increased rating, the adjudicator must consider all symptoms of a claimant’s service-connected mental condition that affect the level of occupational or social impairment. Id. at 443. 

In determining whether a 70 percent rating is warranted, the focus is on whether there are deficiencies in most of the areas of work, school, family relations, judgement, thinking and mood. Bowling v. Principi, 15 Vet. App. 1 (2001).

Although a veteran’s symptomatology is the primary consideration in assessing veteran’s disability rating based on a mental disorder, the regulation also requires an ultimate factual conclusion as to the veteran’s level of impairment in “most areas” for the 70 percent rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013); 38 C.F.R. § 4.130. 

In Bankhead, citing from various sources, the Court first looked at how the term “suicidal ideation” is defined. See Bankhead v. Shulkin, 29 Vet. App. 10, 19 (2017). The Court summed it up stating that “both passive and active suicidal ideation are comprised of thoughts: passive suicidal ideation entails thoughts such as wishing that you were dead, while active suicidal ideation entails thoughts of self-directed violence and death.” Id. at 20. In applying the meaning of suicidal ideation to the rating criteria, the Court noted that suicidal ideation is only listed as a symptom in the criteria for a 70 percent disability rating. Id. There are no analogues at the lower evaluation levels and there are no descriptors, modifiers or indicators as to suicidal ideation in the 70 percent criteria (including no specific mention of “active” suicidal ideation, “passive” suicidal ideation, suicidal “intent,” suicidal “plan,” suicidal “prepatory behavior,” hospitalization, or past suicide attempts). Id. Thus, the Court found “the language of the regulation indicates that the presence of suicidal ideation, alone, that is, a veteran’s thoughts of his or her own death or thoughts of engaging in suicide-related behavior, may cause occupational and social impairment with deficiencies in most areas.” Id.

The Court then turned to the specifics of the case in Bankhead. The Court found that, insofar as the Board required evidence of more than thought or thoughts to establish the symptom of suicidal ideation, it erred. Id. at 20. The Court found that the Board erroneously grafted the risk of self-harm onto the symptom of suicidal ideation in the criteria for a 70 percent evaluation. In other words, a veteran need not be at a risk, whether a high or low risk, of self-harm to establish the criteria of suicidal ideation. Id. at 20-21. The Court also found that the Board erred in applying “hospitalization” as the standard for assessing the severity of that symptom. Id. at 21. Rather, the evaluation of mental disorders requires consideration of the effects of each of the veteran’s mental symptoms on his or her social and occupational situation to determine the severity of the symptom. Id.

Put differently, although suicidal ideation alone may cause occupational and social impairment with deficiencies in most areas, it does not follow that suicidal ideation automatically warrants a 70 percent disability rating. The focus is on whether those suicidal ideations and his other symptoms are of the severity and frequency to cause occupational and social impairment with deficiencies in most areas.

The Veteran as well as his wife have submitted statements regarding the Veteran’s PTSD symptoms. The Veteran’s wife contends that he is: moody, withdrawn, hard to get along with, easily startled, and tends to decline going out with family because of his mood swings. He struggles with sleeping and “feels guilty and on numerous conversations the mention of suicidal thoughts [has] come up.”

The Veteran described his PTSD as causing him to stay by himself because he gets aggravated around people. He also stated:

I now have nightmares and cannot sleep at night. Suicide is in my mind a lot and loud noises make me nervous. When my wife goes shopping, I stay in my vehicle because I don’t want to be around people. My grandkids don’t understand my actions, and I have no idea how to explain them. They rather stay away because of my mood swings and attitude. My wife of nearly 50 years deals with it. I am grateful she does, because it would be easy for her to just walk away.”

The Veteran’s VA treatment records generally support his lay reports of his symptoms. On VA examination in February 2019, the examiner opined that the Veteran’s level of impairment caused by his PTSD was occupational and social impairment with reduced reliability and productivity. At the time of examination, the Veteran reported some ongoing marital distress, but otherwise reported no family difficulties. He endorsed experiencing depressed mood, anxiety, suspiciousness, chronic sleep impairment, and disturbances of motivation and mood. During the interview, the Veteran’s affect was of normal range and control. His appearance and level of engagement were good. The examiner stated that the Veteran’s condition remained essentially unchanged since his last VA examination.

The Veteran has been able to sustain a 55-year marriage, and he reported that he retired from previous jobs when he started drawing Social Security benefits based on his age. As such, it cannot be said that he experiences total occupational and total social impairment such that a 100 percent rating would be warranted. Therefore, the question in this case is whether the Veteran’s PTSD disability picture more nearly approximates occupational and social impairment with deficiencies in most areas or occupational and social impairment with reduced reliability and productivity. Put differently, whether he is entitled to a 50 percent or 70 percent rating for the Veteran’s PTSD.

When considering all of the evidence of record, the Board finds that the Veteran’s PTSD disability picture most nearly approximates occupational and social impairment with reduced reliability and productivity, which is contemplated by his currently assigned 50 percent disability rating.

The Veteran has not even so much as contended, and the evidence of record does not otherwise support, that he experiences symptoms of the type and severity contemplated by the 70 percent rating, with the exception of suicidal ideations. As noted above, the Veteran has reported passive suicidal ideations. His VA treatment records note “occasional suicidal ideations with no plans” on two occasions. See March 2013 and June 2013 VA Treatment Records. He has otherwise denied any suicidal or homicidal ideations. The question therefore becomes whether these suicidal ideations, along with the Veteran’s other symptoms, rise to the level as to cause occupational and social impairment with deficiencies in most areas. Although the Board acknowledges that suicidal ideations alone, whether active or passive, may rise to the level of impairment contemplated by the 70 percent rating, the Board finds that in this case, they do not.

A review of the record shows that the Veteran continues to maintain a 55-year relationship with his wife, albeit distressful at times. He also enjoys spending time with his grandkids, but sometimes gets “moody.” He denied experiencing anxiety in open spaces, closed areas, shopping lines, public transportation, and being alone outside the home. He reported feeling comfortable doing grocery shopping with his family and alone. See January 2019 VA Treatment Records. He has not demonstrated any obsessional rituals and his speech has consistently been found to be clear and not pressured. Although he has trouble sleeping, he denied constant restlessness, tense feelings, or any anticipation of bad things happening. On VA examination, he reported markedly diminished interest or participation in significant activities, but at other times, he denied losing pleasure and stated that he enjoys doing interesting activities. Compare e.g. February 2019 VA Examination and February 2019 VA Treatment Records. He has always been appropriately dressed, with at least fair hygiene. He has also consistently denied hallucinations and his thought processes have been linear with relevant content. His judgment, insight, and impulse control have always been at least fair. 

The Board finds it highly probative that the February 2019 VA examiner determined that, even when considering the Veteran’s passive suicidal ideations, the Veteran’s PTSD most nearly approximated occupational and social impairment with reduced reliability and productivity. It is worth noting that the February 2019 VA examiner determined that the Veteran’s PTSD has essentially gone unchanged his since last VA examination in December 2012. At that time, the examiner determined that the Veteran’s PTSD most nearly approximated occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, which is consistent with a 30 percent rating. These examination reports were based on a complete review of the record and considered the Veteran’s own statements made at the time of examination. Put differently, these examinations afforded the Veteran the opportunity to fully explain the occupational and social impairments caused by his PTSD, and the examiners’ findings were based on the clinical evidence of record, as well as his lay reports.

The Board appreciates the statements and reports submitted by the Veteran and his wife, and accepts them as both competent and credible evidence of the nature of Veteran’s PTSD symptoms. However, even accepting that the Veteran experiences all of these symptoms, his PTSD symptoms are not of the type, nature, severity, or frequency, as those contemplated by the 70 percent rating. Although the Veteran reported passive suicidal ideations, he does not experience these ideations on a persistent basis, as demonstrated by his VA treatment records where, since 2013, has consistently denied any suicidal ideations or plans. These passive suicidal ideations are more consistent with impaired judgment and disturbances of motivation and mood, which are symptoms contemplated by the 50 percent disability rating currently assigned.

As a result, the Board finds that a rating higher than 50 percent is not warranted for the Veteran’s PTSD at any point during the appeal period.

 

 

H.M. WALKER

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Martha R. Luboch, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.